UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE,

                    Plaintiff,                          Case Number 16-13174
v.                                                      Honorable David M. Lawson

DAVID H. BAUM, SUSAN PRITZEL,
TABITHA BENTLEY, E. ROYSTER
HARPER, NADIA BAZZY, ERIK
WESSEL, UNIVERSITY OF MICHIGAN,
and THE REGENTS OF THE UNIVERSITY
OF MICHIGAN,

                    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS, PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT, AND PLAINTIFF'S MOTION FOR INTERIM RELIEF, AND
DENYING PLAINTIFF'S MOTION FOR INTERIM ATTORNEY'S FEES**

This case returns to this Court after remand from the court of appeals, reversing a dismissal

based on the defendants' earlier-filed motion to dismiss.  Plaintiff John Doe was forced out of the

University of Michigan business school in the second semester of his senior year when he was

found to have violated the University's sexual misconduct policy.  After Doe's one-night stand

with a female freshman student, who filed a complaint with the University's Office of Student

Conflict Resolution (OSCR), an appeal board concluded that Doe had sexual relations with the

freshman when Doe should have known that she was too drunk to be able to give consent.  Doe

protested, filing a complaint with this Court alleging, among other things, that his due process

rights were violated because he was not given the chance to cross-examine his accuser.  This Court

dismissed the case, not because it found that cross-examination was a dispensable procedural

nicety, but because it would not have mattered when Doe had admitted that the woman's version of the events of that fateful evening was correct.

The court of appeals disagreed.  It construed the pleadings and the administrative record in the light most favorable to Doe and concluded that the plausibility of the due process claim was not sufficiently rebutted by the purported confession.  *Doe v. Baum*, 903 F.3d 575, 584 (6th Cir. 2018).  It also found that one aspect of Doe's Title IX claim should advance.  The court remanded the case for further proceedings.

After remand, Doe moved for interim relief, partial summary judgment on his due process claim, and interim attorney's fees.  The defendants filed another motion to dismiss.  The defendants argue that the second amended complaint does not show that the individual defendants were personally involved in any due process deprivation, and in any event, they should not be subjected to damages on the due process claim because of qualified immunity.  They do not question the viability of the Title IX claim, but they contend that punitive damages are not available.

Doe believes that the court of appeals decision gave him a complete victory on the due process claim, so he should have judgment as a matter of law on liability.  He wants an order requiring the University to vacate the finding that he violated the sexual misconduct policy and the resulting sanctions, to expunge the documents concerning the investigation and findings, to enjoin the defendants from disclosing information about the whole episode to third parties and from commencing another appeal hearing, to award him the degree he was on his way to earning, and to repay him the tuition he spent finishing his degree at another university.

The second amended complaint contains sufficient facts to establish the personal involvement of some but not all the defendants.  Qualified immunity protects them, though, from a damage award (but not equitable relief) on the due process claim.  Doe is not yet entitled to a

judgment on that claim because the element of prejudice remains in play, although the other elements of the claim are established as a matter of law.   And because the results of the constitutionally defective appeal procedure must be vacated, Doe is entitled to some, but not all, of the interim equitable relief he seeks.   The motions will be granted in part and denied in part.

## I.  Background

The facts of the case were covered at length in the Court's prior opinions on the defendant's motion to dismiss and the plaintiff's post-dismissal motion for relief, and in the opinion by the Sixth Circuit reversing the dismissal.   The amended complaint raised claims that (1) the applicable definition of "incapacitated" in the University's sexual misconduct policy (which since has been revised) is "void for vagueness" (Count I); (2) the appeal process deprived Doe of his right to procedural due process because he had no meaningful opportunity for a fair hearing and review of his case by the appeal panel (Count II); (3) the University violated his rights under the First Amendment by denying him the opportunity to set forth his "objections" in his response to the penalty proposal (Count III); (4) the appeal panel discriminated against him on the basis of his sex, contrary to Title IX, by refusing fully and fairly to consider his side of the story (Count IV); and (5) the University's policy regarding sexual misconduct appeals had a disparate impact on Doe based on his sex, because students accused of sexual misconduct are not allowed to have an oral hearing before the appeal board, to pose questions to the complainant on the record, or to have certain other privileges inherent in a live hearing (Count V).   The complaint also included trailing claims for gender discrimination under Michigan's Elliot-Larsen Civil Rights Act (Counts VI and VII), on the same premises advanced in Counts IV and V.   The Court dismissed all counts on the defendants' motion.   The court of appeals reversed the dismissal of Count II and Count IV.   After remand, the plaintiff filed a second amended complaint alleging that the appeal board proceeding

denied him due process of law by depriving him of his right to cross-examine his accuser (Count I), and the appeal board discriminated against him on the basis of sex in violation of title IX when it reached an erroneous outcome based on his gender (Count II).

The court of appeals held that the plaintiff's procedural due process claim should not have been dismissed at the pleading stage "[b]ecause Doe never received an opportunity to cross-examine Roe or her witnesses — not before the investigator, and not before the [University's Appeal] Board," and, therefore, "there is a significant risk that the university erroneously deprived Doe of his protected interests." *Doe*, 903 F.3d at 582. The panel also flatly rejected three out of four of the University's arguments in defense of the propriety of its disciplinary appeal process, which were that: (1) the purpose of cross-examination was fulfilled when the plaintiff was permitted to review the complainant's statement and submit a response identifying inconsistencies in the complainant's presentation for the investigator; (2) cross-examination was not required because the university's decision did not depend entirely on a credibility contest between the plaintiff and the complainant; and (3) the plaintiff was not prejudiced by the denial of an opportunity to cross-examine, because, after the disciplinary proceedings had concluded, the complainant gave a deposition in her civil lawsuit against the plaintiff, and, according to the University, her deposition testimony was "consistent with what she told the investigator." *Id.* at 582-85. The University had raised all those same defenses before this Court, but prospectively those issues now are dead letters.

The panel leveled a more reserved critique of the defendants' argument that the failure to allow cross-examination did not rise to the level of a due process violation because the plaintiff admitted the conduct for which he was disciplined, concluding that Doe's admission was equivocal:

> Because the district court made [the appeal board's] report part of the pleadings, we must read it in the light most favorable to Doe. When we do, we cannot conclude that Doe admitted to any of the critical facts in his case — i.e., that Roe was too drunk to consent to sex, and that he knew or should have known as much. For one, we would have to ignore Doe's claim that the sex was "consensual." And for another, because Doe did not mention anything about Roe's level of intoxication in his own account of the night's events, his concession that Roe was correct and that he "got it all wrong" appears to relate only to the points on which the detective said their two accounts actually diverged — the order of the sexual act. This alleged confession thus does not sufficiently rebut the plausibility of Doe's claim.

*Id.* at 584 (citations omitted).

After the case was remanded, the Court held a status conference with counsel. Doe's attorney took the position that the merits of the due process claim were resolved by the decision of the court of appeals, and that equity demanded that the plaintiff receive prompt injunctive relief on that claim, including expungement of all disciplinary consequences precipitated by the adverse appeal of the OIE investigator's findings, and an award of the degree for which the plaintiff was lacking only 13.5 credits when he was forced to withdraw. The University insisted that it stands ready to provide a "new hearing" on the appeal, in which it is prepared to offer the plaintiff the opportunity for live cross-examination that he desires. The plaintiff also insisted that, whatever is the resolution of the due process claim, discovery immediately should commence on the Title IX claim, which the Sixth Circuit also allowed to proceed. Because the parties appeared unlikely to reach an agreement on what should be the proper course forward, the Court directed the plaintiff to file a motion for imposition of a remedy on the due process claim. The plaintiff subsequently filed his motion for relief, which the Court views now as a motion for interim injunctive relief. The Court heard oral argument on those motions on February 14, 2019. At the direction of the Court, the plaintiff also subsequently filed a second amended complaint, referenced above, realigning the claims and parties to account for the previous undisturbed rulings of the Court and the impact of the Sixth Circuit's ruling on the remand.

After the hearing on those motions, the defendants filed a motion under Rule 12(b)(6) to dismiss Count I of the Second Amended Complaint for failure to state a claim against Baum, Pritzel, Bentley, Bazzy, Wessel, Walesby, Frumkin, and Sellers and the claims for monetary relief against all the individual defendants, and to dismiss the claims for punitive and exemplary damages on Count II. They do not raise any challenge to the Count I claims for injunctive and declaratory relief against individual defendant E. Royster Harper, or to the claims for injunctive relief and compensatory damages against the University under Title IX (Count II).

For his part, the plaintiff responded with a motion for partial summary judgment on Count I, asking the Court to return him to the status quo before the defective appeal board hearing. He also asks the Court to enter a permanent injunction vacating the findings against him that were made by the appeal board and expunging the sanctions imposed upon him as a result of those findings. Doe also filed a motion for an interim award of attorney fees under 42 U.S.C. § 1988(b) of $326,824.50, plus costs of $9,986.23.

## II.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court "must 'construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true.'" *Id.* at 951 (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). But the Court also may consider the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010); *see also Cates v. Crystal Clear Tech., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (instructing that "'[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'") (quoting *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)). However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

### A. Count I (Due Process)

Doe makes his due process claim in Count I via 42 U.S.C. § 1983, which imposes liability on state actors who deprive a person of federal constitutional rights. *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004)). The plaintiff must establish the liability of each individual defendant by that person's own conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

The constitutional right Doe invokes is the protection conferred by the Fourteenth Amendment not to be deprived of property without due process of law.  To plead a procedural due process claim, his complaint must contain facts establishing three elements: "(1) that [he has] a property interest protected by the Due Process Clause; (2) that [he was] deprived of this property interest; and (3) that the state did not afford [him] adequate pre-deprivation procedural rights." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019).  In addition, where the allegation is that the plaintiff was denied a fair hearing, the "procedural due process claim requires a showing of prejudice."  *Mendoza-Garcia v. Barr*, 918 F.3d 498, 508 (6th Cir. 2019) (citing *Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008) ("In order to prevail on a procedural due process challenge, Graham must also show prejudice.  Indeed, we need not address the merits of a claim if there is no demonstration of prejudice."); *Al Khouri v. Ashcroft*, 362 F.3d 461, 466-67 (8th Cir. 2004); *Agyeman v. INS*, 296 F.3d 871, 884 (9th Cir. 2002)).  "To prove prejudice, he must show that his 'claims could have supported a different outcome.'"  *Ibid.* (quoting *Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006)).  In order words, he must establish that the information or defense that he wanted to present could have changed the outcome of the proceeding, if he had been afforded the full benefit of the process to which he was entitled.  *Ibid.*  The Sixth Circuit has observed that the language used to describe the prejudice standard has varied somewhat in its past decisions, but in close cases the more permissive formulation first articulated in *Sako* controls. *Mendoza-Garcia*, 918 F.3d at 508 n.1.

All those elements can be found in the second amended complaint in some form or another.  But the plaintiff must establish the liability of each individual defendant by that person's own conduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable

to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### 1. Defendant Walesby

The plaintiff alleges nothing more about defendant Walesby beyond that he "reviewed and approved the [OIE Investigator's] Report." But the OIE investigator concluded, and stated in her report, that there was insufficient evidence to find that Doe violated the sexual misconduct policy. In his original complaint and briefing in the earlier proceedings before this Court, Doe repeatedly lauded the fairness of the OIE investigator and the propriety of her finding of no responsibility. He never has alleged, or even suggested, that Walesby personally was involved in any way in the defective appeal process. The Court will dismiss the secomd amended complaint against defendant Walesby.

### 2. Defendants Bazzy and Wessel

The lone allegations against defendants Bazzy and Wessel are that they "approved and overs[aw]" the "resolution process" that ensued after the Appeal Board rendered its finding that the plaintiff violated the sexual misconduct policy. The "resolution process" was the offer to the plaintiff to either consent to voluntarily withdrawing from the University or face the inevitable consequence of expulsion. However, the plaintiff has not alleged any facts to suggest that Bazzy or Wessel had any personal involvement in the defective appeal procedure itself.

Doe's attempts to frame any portion of his procedural due process claims as embracing the "resolution" process after the finding of discipline cannot succeed, because the sole ground for that claim remanded to this Court was the denial of the right to a live hearing with cross-examination during the appeal process. That also was the only ground on which Doe appealed the denial of his due process claims. He has waived the right to pursue the claim on any basis other

than the denial of a live hearing with cross-examination. Moreover, as discussed more fully below, this Court is bound by the doctrine of the law of the case to address the surviving claim solely as it was framed in the remand.

Doe also attempted to plead other various claims relating to the resolution process such as a First Amendment claim based on the demand that he withdraw a statement of objections to the disciplinary process if he wanted to accept the alternative of voluntary withdrawal. But, again, all those claims were dismissed on the merits, and the plaintiff did not pursue any of them on appeal. There are, therefore, no live claims in the case involving any conduct for which defendants Bazzy and Wessel personally were responsible.

Bazzy and Wessel cannot be found liable for "overseeing" the disciplinary process without attempting to rectify any constitutional injury. It is axiomatic that neither they (nor any of the other individual defendants) may be held liable based on either a merely supervisory role, *Ashcroft*, 556 U.S. at 676, or inaction in the face of a known constitutional violation, absent some affirmative endorsement or encouragement or direct participation in the misconduct, *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992) ("[T]he mere failure to act, even in the face of a statistical pattern of misconduct, is an insufficient basis for holding a supervisor liable for the constitutional violations of her employees."). It is well established that mere knowledge and failure to act do not suffice to establish the liability of a party under 42 U.S.C. § 1983. Rather, the plaintiff must show that a defendant "encouraged the specific incident of misconduct or in some other way directly participated in it." *Phillips v. Roane County*, 534 F.3d 531, 543 (6th Cir. 2008). It is not enough to show merely that a defendant knew of unconstitutional conduct and failed to act. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Rather, the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the

unconstitutional conduct." *Sheehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  The second amended complaint offers nothing to sustain the required showing as to these defendants, and the case against them will be dismissed.

### 3.  Defendants Frumkin and Sellers

Defendants Jeffery Frumkin, presently the University's Associate Vice Provost for Academic and Faculty Affairs, Senior Director of the OIE, and Title IX Coordinator, and Robert Sellers, the University's Vice Provost for Equity and Inclusion and Chief Diversity Officer, are not even mentioned in the second amended complaint beyond the recitations of their job titles. The plaintiff has not pointed to any facts to suggest that they were involved in any way with his disciplinary process, or that they even were employed by the University in any capacity at the time when the due process violation occurred.  The fact that they presently hold positions that might in some prospective sense be involved in compliance with any injunctive relief is immaterial to whether they have any personal responsibility for the past violations.  Moreover, any injunction certainly would embrace all employees, agents, and representatives of the University in any capacity, so there is no basis for their inclusion as parties where at least one other fully capable and responsible official with the undisputed authority to redress the violations (see below) will remain as a defendant.  Because the plaintiff has not alleged any personal involvement by Frumkin or Sellers in the constitutional torts at issue, the Court will grant the request to dismiss Count I against them.

### 4. Defendant Harper

As an initial matter, the University does not challenge the claims for injunctive and declaratory relief against defendant E. Royster Harper, who the plaintiff alleges "was at pertinent times the Vice President for Student Affairs at the University," and "oversaw the OIE and OSCR

process and signed pertinent documents."  The plaintiff asserts that after "the Appeals Board issued a decision, finding that Plaintiff had violated the Sexual Misconduct Policy . . . Defendant Harper accepted the Board's recommendations on June 13, 2016."  Second Am. Compl. ¶¶ 91-92, ECF No. 121, PageID.4112-13.  The allegation that Harper had the final sign-off on the improperly imposed discipline certainly suffices to establish her personal involvement, and the University apparently does not contest the plaintiff's assertions that she has the power to grant most of the injunctive relief sought, including expungement of the records and consequences of the discipline.

The second amended complaint states a claim in Count I against defendant Harper.

### 5.  Defendants Baum, Pritzel, and Bentley

Doe sufficiently has alleged that the members of the Appeal Board personally were involved in the injury to his rights, because it is undisputed that they rendered the finding of misconduct without conducting any live hearing or allowing him an opportunity to cross-examine the witnesses against him.  All of the disciplinary consequences that followed were precipitated by that finding, rendered personally by them after a constitutionally unsound process, for which they personally were responsible.  The Court will deny the motion to dismiss Count I against these defendants.

### 6.  Qualified Immunity

The individual defendants all argue that Doe's claims for money damages (punitive, exemplary, and otherwise) against the individual defendants must be dismissed because those defendants are entitled to qualified immunity.  The Court agrees.

"The doctrine of qualified immunity shields government officials performing discretionary functions from civil liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Baynes*, 799 F.3d at 609 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 538-39 (6th Cir. 2008)).  "To determine whether a government official is entitled to qualified immunity, [the court must] make two inquiries: 'First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  Second, was the right clearly established at the time of the violation?  These prongs need not be considered sequentially.'"  *Id.* at 609-10 (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010)).  "The plaintiff bears the burden to show that the defendant is not entitled to qualified immunity."  *Id.* at 610 (citing *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005)).

"A right is 'clearly established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Baynes*, 799 F.3d at 610 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "The relevant inquiry is 'whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.'"  *Ibid.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see also J. Endres v. Ne. Ohio Med. Univ.*, --- F.3d ---, No. 18-3825, 2019 WL 4125263, at *14 (6th Cir. Aug. 30, 2019).

"The purpose of the 'clearly established' prong, clarified by the Supreme Court's decision in *Hope v. Pelzer*, is to ensure that officials are on notice that their alleged conduct was unconstitutional."  *Baynes*, 799 F.3d at 610 (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 741 (2002)).  "As *Hope* made abundantly clear: 'the salient question . . . is whether the state of the law [at the time of the action giving rise to the claim] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional.'"  *Ibid.* (quoting *Hope*, 536 U.S. at 741).  "Although the focus of the clearly established prong is whether the official had notice that his alleged conduct was improper, . . . qualified immunity is an objective rather than a subjective

-13-

inquiry." *Id.* at 610-11 (citing *Caudill v. Hollan*, 431 F.3d 900, 911-12 (6th Cir. 2005); *Cope v. Heltsley*, 128 F.3d 452, 458 (6th Cir. 1997)). "In *Hope*, the Supreme Court established that, for purposes of qualified immunity, the precise factual scenario need not have been found unconstitutional for it to be sufficiently clear to a reasonable official that his actions violate a constitutional right — that is, for the right to be 'clearly established.'" *Id.* at 611 (quoting *Hope*, 536 U.S. at 739, 741). "[G]overnment officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Ibid*

Here, the right that (now) indisputably was violated — the unconditional right to a live hearing with the opportunity to cross-examine witnesses — was not clearly established in 2016. Doe admits as much in his response, where he concedes that "[s]ince Plaintiff brought his case, the Sixth Circuit has *expanded* the nature of Doe's rights to include an *additional* right to cross-examination to be applied in conjunction with the inviolate, well-established rights to sufficient notice and a meaningful opportunity to be heard." Plf.'s Resp., ECF No. 143, PageID.4743 (emphasis in original).

The Sixth Circuit, as well, recognized that the right that it "reaffirmed" when it remanded the case to this Court was clearly established, at the earliest, only in 2017, by the decision of the court of appeals in *Doe v. University of Cincinnati*, 873 F.3d 393 (2017). The court of appeals recited the evolution of the right to cross-examination at the outset of its opinion:

> Thirteen years ago, this court suggested that cross-examination may be required in school disciplinary proceedings where the case hinged on a question of credibility. *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 641 (6th Cir. 2005). Just last year, we encountered the credibility contest that we contemplated in *Flaim* and confirmed that when credibility is at issue, the Due Process Clause mandates that a university provide accused students a hearing with the opportunity to conduct cross-examination. *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 401-02 (6th Cir. 2017). Today, we reiterate that holding once again: if a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and

> adverse witnesses in the presence of a neutral fact-finder.  Because the University
> of Michigan failed to comply with this rule, we reverse.

*Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018).  The plaintiff does not cite any authority holding, nor does he even attempt to argue, that the unconditional right to a live hearing with cross-examination in disciplinary proceedings that could lead to expulsion was clearly established by any controlling federal decision before 2017.

Instead, in an ambitious episode of revisionist fervor, the plaintiff attempts to recast his entire case as focused on a supposed violation of the bedrock rights to "notice" and an "opportunity to respond" that unquestionably have been clearly established for decades as fundaments of due process jurisprudence.  But no live claim of any such basic due process violation presently is before the Court, nor has it ever been.  To begin with, the sole ground on which the dismissal of the due process claim was reversed and remanded to this Court from the court of appeals was the violation of the right to cross-examination at a live hearing.  *Doe v. Baum*, 903 F.3d at 588 ("[W]e **REVERSE** the district court's dismissal of John Doe's procedural due process claim *insofar as it is based on the university's failure to provide a hearing with the opportunity for cross-examination*, we **REVERSE** the district court's dismissal of John Doe's Title IX claim insofar as it is based on erroneous outcome, and we **REMAND** for further proceedings consistent with this opinion.") (emphasis added).  Under the law of the case doctrine, this Court is constrained to address only those claims that were remanded after appeal, within the bounds of the mandate.  Earlier this year, the court of appeals explained:

> What we call law of the case has two parts.  The first part, known as the "mandate rule," is vertical. A lower court "is bound by the decree [of a higher court] as the law of the case, and must carry it into execution according to the mandate."  *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895).  The rule springs from the hierarchical structure of our judicial system and leaves no room for discretion.  If the U.S. Supreme Court resolves an issue in a case and remands the matter to us, we are duty bound to follow the mandate of the superior court.  So too at the trial

level. *If we decide an issue and remand the case, the trial court must carry out its duties in accordance with that mandate*.

The second part, the part implicated by this case, is horizontal. It expresses the practice of courts generally to refuse to reopen what has been decided by an earlier panel of the same court in the same case. Unlike its upward counterpart, the sideways version of the law of the case is not a limit to a court's power. A later panel of an appellate court, like a district court, has the power to revisit prior decisions of its own or of a coordinate court in any circumstance.

*Medical Center at Elizabeth Place, LLC v. Atrium Health System*, 922 F.3d 713, 733-34 (6th Cir. 2019) (Sutton, J., concurring) (citations and quotations omitted, emphasis added).

Moreover, this Court already has dismissed the due process claims framed by the plaintiff on every other discernible basis besides the denial of a hearing with cross-examination, *see Doe v. Baum*, 227 F. Supp. 3d 784, 797 (E.D. Mich. 2017), *rev'd and remanded*, 903 F.3d 575 (6th Cir. 2018) ("*Doe does not criticize the notice given him by the OIE*. His procedural due process claim is predicated on the following allegations: (1) the review panel improperly conducted a 'de novo review' of the record, rather than applying the 'clearly erroneous' standard of review called for under the policy; (2) the definition of 'incapacitated' that was applied during investigation and review of his case is 'unconstitutionally vague'; (3) Doe was not given an opportunity to appear personally before the appeal panel or confront or cross-examine the complainant or other witnesses; and (4) at least one member of the appeal panel had a conflict of interest that rendered him biased.") (emphasis added), and the plaintiff has waived his right to advance any of the other various theories of recovery articulated in his original pleadings by failing to pursue them in his appeal. It is well settled that a party that fails to pursue a ground for relief on appeal from a claim-dispositive ruling is barred from making any headway on that theory after remand. *FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 286-87 (6th Cir. 2018) (holding that "under the doctrine of law-of-the-case, a party that fails to appeal an issue waives his right to raise the issue before the district court on remand or before the Sixth Circuit on appeal after remand") (citations

and quotations omitted). The plaintiff was successful in his appeal of the dismissal of his denial of hearing and cross-examination claim. All other grounds for litigation of the due process count have been either foreclosed or waived by the disposition of that appeal.

The Sixth Circuit and the Supreme Court "have repeatedly told [the lower federal courts] not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."); *Guertin v. State*, 912 F.3d 907, 934 (6th Cir. 2019) (citing *Ashcroft*). The right at issue here — and the only right at issue presently in the context of the due process claim — is the right to "a hearing with the opportunity for cross-examination." *Doe v. Baum*, 903 F.3d at 588. That right, as the court of appeals held, unquestionably was violated by the University when it disciplined the plaintiff. Equally unquestionably, it was not a right that was clearly established under federal law at the time of the violations. Therefore, all the individual defendants are entitled to dismissal of the plaintiff's claims for money damages on Count I of the complaint.

Notably, Count I was pleaded against the individual defendants only and not the University. But any claim for money damages against the University would be barred anyway by Eleventh Amendment sovereign immunity, since it is an organ of the State. The claims for money damages on the Title IX claim, of course, counter no such obstacle, as the University concedes. Nevertheless, the plaintiff admits that Title IX does not permit recovery of any sums for punitive and exemplary damages. Based on those concessions and for the reasons discussed above, the Court will dismiss the claims for money damages in Count I against all the individual defendants

on the basis of qualified immunity and dismiss all the plaintiff's demands for punitive and exemplary damages on Counts I and II.

Of course, the qualified immunity defense implicates only the claims for money damages and "does not bar actions for declaratory or injunctive relief." *Bible Believers v. Wayne County*, 805 F.3d 228, 257 n.20 (6th Cir. 2015) (collecting cases). Thus, the claims under Count I for declaratory and injunctive relief against defendants Harper, Baum, Pritzel, and Bentley, may proceed notwithstanding the other dismissals.

### III. Plaintiff's Motion for Partial Summary Judgment

The plaintiff believes that he is entitled to a judgment of liability as a matter of law on Count I under Rule 56(a) because the Sixth Circuit has established that his rights indisputably were violated by the denial of a live hearing with cross-examination, there is no dispute that he was denied such a hearing, and it was required because the disciplinary decision turned on a question of credibility. The defendants respond that the question of prejudice is still in play, and fact issues remain on that element to be decided.

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the burden of showing that no genuine issues of material fact exist," and it "must demonstrate the 'basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at 627-28 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Where the material facts are mostly settled, and the question before the court is purely a legal one, the summary judgment

procedure is well suited for resolution of the case.  *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).  But the Court cannot resolve material fact issues on a summary judgment motion.

The record establishes conclusively that the plaintiff must prevail as a matter of law on three of the elements of his procedural due process claim.  *See Cahoo*, 912 F.3d at 900.  The Sixth Circuit's ruling on the appeal, and the undisputed administrative record of the proceedings, conclusively establishes the first three elements of the procedural due process claim.  As the Court previously ruled, and as affirmed by the court of appeals, the plaintiff had a protected interest in his continued enrollment.  He unquestionably was deprived of that interest when he was forced to withdraw his enrollment in lieu of expulsion.  The Sixth Circuit conclusively held that the plaintiff was not afforded sufficient pre-deprivation rights when he was denied a live hearing with the opportunity to cross-examine witnesses.  *Doe v. Baum*, 903 F.3d at 578.

On the fourth element — prejudice — important questions of material fact remain.  *See Mendoza-Garcia v. Barr*, 918 F.3d at 508.  The court of appeals held as much when it concluded that the Appeal Board had to decide which version of the events to accept, Doe's or the complainant's.  It was *because* the Appeal Board had to decide credibility of the witnesses that cross-examination became an essential element of due process in that particular OSCR complaint resolution.  The Sixth Circuit "made two things clear: (1) if a student is accused of misconduct, the university must hold some sort of hearing before imposing a sanction as serious as expulsion or suspension, and (2) when the university's determination turns on the credibility of the accuser, the accused, or witnesses, that hearing must include an opportunity for cross-examination."  *Doe v. Baum*, 903 F.3d at 581.  The court of appeals reversed the dismissal of the due process claim because it found that the determination by the appeals board necessarily — and as stated by the

Board itself in its report — concerned a determination of the credibility of the witness statements and the resolution of conflicting narratives of the sexual encounter. *Id.* at 580 ("According to the [University Appeal] Board, Roe's description of events was 'more credible' than Doe's, and Roe's witnesses were more persuasive." (quoting Mot. for Prelim. Inj., Ex. D, Appeals Board Report dated May 25, 2016, ECF No. 6-5, PageID.274-75 ("In light of all this, we find Complainant's description of the events leading up to and during her sexual encounter with Respondent to be more credible than Respondent's description."))).

The court of appeals dismissed the defendant's argument that the due process violation was excused by the plaintiff's admissions during his police interview, because it concluded that there was a question of fact as to whether the plaintiff "admitted" the misconduct. *Id.* at 584 ("This court has long held that cross-examination is unnecessary if a student admits to engaging in misconduct. After all, there is little to be gained by subjecting witnesses to adversarial questioning when the accused student has already confessed. But at the motion-to-dismiss stage, we cannot conclude that Doe confessed to the misconduct in this case."). That conclusion was based on the ambiguity that the court discerned in the plaintiff's interview statements. If there presently is a question of fact before this Court about whether the plaintiff confessed to the misconduct, then that same question of fact necessarily also was before the Appeal Board — as the Board itself recognized when it characterized its determination as resolving a question of credibility. The administrative record that was before the Board is a fixed and historical fact. Nothing that has been or could be discovered will alter the fact that the question before the Board in the first instance was one of witness credibility, and where credibility is the deciding factor, a live hearing and cross-examination must be employed to resolve the competing narratives.

Nevertheless, to secure final relief on the due process claim, including declaratory and injunctive relief, the plaintiff also must prove that he suffered prejudice from the denial of adequate process. "To prove prejudice, he must show that his 'claims could have supported a different outcome.'" *Mendoza-Garcia*, 918 F.3d at 508 (quoting *Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006)). In other words, he must establish that the information or defense that he wanted to present could have changed the outcome of the proceeding, if he had been afforded the full benefit of the process to which he was entitled. *Ibid.* The plaintiff must elicit sufficient proofs to support a finding that he would not have been disciplined if he had been afforded all the process that he was due, but the administrative record also discloses sufficient information for the University to argue plausibly otherwise.

The University insists that it should be allowed to prove that it would have disciplined the plaintiff anyway even if it had followed a sound process. That is an affirmative defense. The University is entitled to argue that discipline was inevitable, if it can prove by a preponderance of the evidence that the plaintiff in fact violated the sexual misconduct policy. *Newsome v. Batavia Local School District*, 842 F.2d 920, 928 (6th Cir. 1988) ("To the extent that Newsome seeks reparative relief aimed at restoring him to the position he would have occupied but for the due process violation, he is entitled to such relief *unless the school district can prove, by a preponderance of the evidence, that, even had it not deprived Newsome of his right to procedural due process, he would have still rightfully been expelled*." (emphasis added)). It will have a chance to do so at trial. And the plaintiff is entitled to put on his own proofs to rebut that defense, which will precipitate the outcome that he has sought from the outset of this case, that being in effect a trial *de novo* on the question whether he violated the sexual misconduct policy.

Doe is not entitled to summary judgment of liability on Count I of the second amended complaint. But Rule 56 permits the Court to enter judgment as a matter of law on any material fact at issue in the case, including on particular elements of a claim. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."); Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case."). The Court will enter judgment as a matter of law in Doe's favor on all elements of the due process claim in Count I save one, reserving for trial the question of whether the plaintiff was prejudiced by the established violation of his rights.

## IV. Plaintiff's Motion for Interim Attorney Fees

The plaintiff moves for an award of interim attorney fees, arguing that he is entitled to collect them because he has "prevailed" on the due process claim. Under 42 U.S.C. § 1988(b), the court "may allow the prevailing party" a reasonable attorney's fee for civil actions brought under section 1983. But that relief is not appropriate where the plaintiff has not yet prevailed because substantial obstacles to the plaintiff's final recovery remain, and where no final judgment has been or can be entered on either of the surviving claims without the opportunity for discovery and eventually a trial.

Sometimes preliminary relief will justify an attorney's fee award under section 1988(b). *See Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019). But that may not occur unless there is "a court-ordered, material, enduring change in the legal relationship between the parties." *Id.* at 448 (citing *McQueary v. Conway*, 614 F.3d 591, 596 (6th Cir. 2010)). "[F]or the change to have been *enduring*, it must have been irrevocable, meaning it must have provided plaintiffs with everything

they asked for." *Id.* at 448 (citing *McQueary*, 614 F.3d at 599). For Doe, that means that he must not only survive a motion to dismiss, but he must obtain a court determination that he is entitled to some sort of permanent relief, such as damages, or re-admission to the University, or an award of the degree that he was not allowed to finish from that institution.

The plaintiff's demand for interim attorney fees is inappropriate because he is not yet properly regarded as a "prevailing party." *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 605 (2001) ("[Surviving a motion to dismiss for failure to state a claim] is not the type of legal merit that our prior decisions, based upon plain language and congressional intent, have found necessary. Indeed, we held in *Hewitt* that an interlocutory ruling that reverses a dismissal for failure to state a claim 'is not the stuff of which legal victories are made.'" (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987) ("[A]n interlocutory ruling that [a] complaint should not have been dismissed for failure to state a constitutional claim . . . is not the stuff of which legal victories are made.")); *see also Kiser v. Reitz*, No. 12-00574, 2018 WL 2937898, at *4 (S.D. Ohio June 12, 2018), *aff'd sub nom. Kiser v. Kamdar*, No. 17-4041, 2018 WL 4958492 (6th Cir. Oct. 15, 2018) ("[T]he Sixth Circuit's decision in *Kiser II* to reverse the dismissal of Dr. Kiser's First Amendment and Equal Protection claims did not confer prevailing party status.").

Based on those authorities, and because the plaintiff is not entitled to summary judgment on Count I, the Court will deny the motion for interim attorney fees.

V. Plaintiff's Motion for Imposition of Remedy on Due Process Claim

On the strength of the court of appeals opinion in this case, Doe also filed a motion for the following interim relief:

    (a)    Vacation and expungement of the finding of responsibility, sanctions and other actions;

(b)     Vacation and expungement of the no-contact and permanent suspension orders issued June 22, 2016;

(c)     Expungement of all documents involving the investigation and findings;

(d)     Enjoining the University, the Defendants and their successors from disclosing any information to third parties; and

(e)     Enjoining the University, the Defendants and their successors from disclosing Plaintiff's identity to third parties.

He also contends that it would be "appropriate" under the circumstances for the University of Michigan, Ross School of Business, to award the undergraduate degree that he would have completed if he was not forced to withdraw. And he argues that he should be awarded damages of at least $30,000, representing the tuition that he paid when he was forced to complete a degree program through other schools, which required him to complete an additional 55 credit hours of work. The plaintiff also insists that the University should not be permitted to engage in any "further process" to reimpose discipline, and the matter should be closed based on the OIE investigator's original findings.

Although many of these demands are not warranted unless Doe prevails on his claims in full (the Sixth Circuit did not render judgment as a matter of law on either of the remanded claims), other aspects of Doe's requests can be characterized fairly as preliminary injunctive relief. And when deciding whether to grant that, "courts balance four factors: (1) whether the movant has demonstrated a strong likelihood of success on the merits; (2) whether he will suffer irreparable injury in the absence of equitable relief; (3) whether the injunction will cause substantial harm to others; and (4) whether the public interest is best served by issuing the injunction." *Miller v. Parker*, 910 F.3d 259, 261 (6th Cir. 2018). "[T]he four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

"[T]he 'purpose of a preliminary injunction [generally is] to preserve the relative positions of the parties until a trial on the merits can be held.'" *Benisek v. Lamone*, --- U.S. ---, 138 S. Ct. 1942, 1945 (2018) (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). However, "[t]he preliminary injunction serves [another] important purpose — to allow a victory by [the plaintiff] to be meaningful." *McGirr v. Rehme*, 891 F.3d 603, 614 (6th Cir. 2018) (quotations omitted). "The scope of the remedy [imposed via preliminary injunction] must be no broader and no narrower than necessary to redress the injury shown." *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). "The scope of an injunction is 'dependent as much on the equities of a given case as the substance of the legal issues it presents,' and courts must tailor the scope 'to meet the exigencies of the particular case.'" *Ibid.* (quoting *Trump v. Int'l Refugee Assistance Project*, --- U.S. ---, 137 S. Ct. 2080, 2087 (2017)). "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. at 2087 (quotations and citations omitted). "In awarding a preliminary injunction a court must also consider the overall public interest[; it] need not grant the total relief sought by the applicant[,] but may mold its decree to meet the exigencies of the particular case." *Ibid.*

The present posture of the case favors a preliminary injunction imposing some of the narrow restrictions that the plaintiff urges, with two exceptions. First, the expungement of "all records" of the investigation is not appropriate where the plaintiff never has advanced, and does not now have before this Court, any viable claims based on any impropriety in the initial investigation that resulted in a finding that the plaintiff did not commit any misconduct. Second, the demand for a permanent prohibition against any further disciplinary proceedings also would be inappropriate, where there never has been any suggestion that the disciplinary appeal was

improperly commenced, despite the fact that the ensuing process unquestionably was defective. However, in order to preserve the status quo until the litigation is resolved, the University will be enjoined from proceeding with any further disciplinary process until the proceedings on the plaintiff's presently pending claims have concluded.  All of the pertinent factors weigh in favor of imposition of narrowly tailored injunctive relief to vacate the consequences of the unconstitutional administrative proceeding and otherwise preserve the status quo until the merits of the plaintiff's claims have been fully addressed.

The first factor weighs strongly in favor of early injunctive relief because, whatever else may yet be in doubt, the ruling of the court of appeals in the plaintiff's favor, and the Court's judgment as a matter of law on all but one of the elements of the due process claim, demonstrate the plaintiff's likelihood of success on the merits of at least his claims for declaratory and injunctive relief in Count I of his second amended complaint.

The second factor also heavily weighs in favor of injunctive relief, because the risk to the plaintiff's reputation due to prospective disclosure of the wrongfully imposed disciplinary sanctions readily suggests a prospect of irreparable harm.  *United States v. Miami University*, 294 F.3d 797, 819 (6th Cir. 2002) ("[T]he harm suffered by the myriad number of students affected by the continued release of student disciplinary records is irreparable, and by definition, not compensable."); *Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 555 (6th Cir. 2013) ("[R]isk to the requesting party's reputation satisfies the irreparable injury requirement." (citing *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)).  The University contends that the non-disclosure provision of the voluntary withdrawal agreement that was executed by the parties suffices to assuage the plaintiff's concern, but the protections of that

-26-

agreement have no prospective value because the agreement must be vacated as the fruit of the constitutionally unsound disciplinary appeal.

The third factor also weighs in favor of injunctive relief, since the University concedes that the decision of the appeal board is constitutionally defective and must be set aside. The University certainly cannot be regarded as suffering any discernible harm from an order merely setting aside the consequences of an admittedly unconstitutional process that violated the plaintiff's rights. The University insists that it is ready to conduct a renewed appeal and wants to do so promptly. But it has not identified any way in which it will suffer harm from delay of that proceeding during the pendency of this case. Moreover, the University contends that, under its policies, the plaintiff's academic application for degree completion cannot be advanced while the disciplinary appeal remains unresolved, and, in any event, the plaintiff has not been enrolled in the University for years by now and already has completed his degree elsewhere.

The fourth factor also favors injunctive relief, because, although there is an obvious public interest in allowing the University to enforce its sexual misconduct policy, there is a countervailing interest in ensuring that the policy is implemented in a constitutional manner. When it is not, equity favors ensuring just relief and compensation for any injury to the rights of students that may result. If the University so ardently desired to reach a prompt and final resolution of the disciplinary appeal, then it could have done so years ago simply by providing the plaintiff a constitutionally sound process. The principal cause of the delay in the final resolution of the dispute was the University's stubborn resistance to providing the form of hearing that the plaintiff deserved, and it will not be significantly harmed by further delay of that resolution until this litigation reaches its conclusion.

That leaves the question of what relief the Court should impose to redress the established constitutional injury and preserve the status quo as this case proceeds. The injunction must be narrowly tailored to relieve the plaintiff of the immediate consequences of the unconstitutional appeal board decision and prospectively to prevent further harm and preserve the status quo while this case is resolved. "It is well-established that federal courts possess broad discretion to fashion equitable remedies," *Coalition for Government Procurement v. Federal Prison Industries, Inc.*, 365 F.3d 435, 460 (6th Cir. 2004), but "[t]he scope of the remedy [imposed via preliminary injunction] must be no broader and no narrower than necessary to redress the injury shown," *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). In this case, the equities favor a preliminary injunction requiring the following: (1) the University must vacate the finding of misconduct by the appeal board, expunge all sanctions and consequences of that finding, including the plaintiff's "voluntary withdrawal" and the no-contact directives imposed as a result of that withdrawal agreement, and restore the plaintiff promptly and fully to the same academic status that he held just after the favorable finding by the OIE investigator was published, but before the complainant's appeal was commenced; (2) the University must be prohibited from disclosing to any third parties any information concerning the disciplinary appeal and its consequences, or the identity of the plaintiff in any fashion connected with the disciplinary appeal and this litigation; and (3) the University must be prohibited from proceeding in any way with any further disciplinary appeal process until this litigation has concluded.

The first of those three provisions is uncontroversial, and the University concedes that the finding of the appeal board should be set aside. Moreover, the restoration of the status quo ante that was upset by the school's illegal appeal procedure is just under the circumstances, particularly in light of the real prospect that the plaintiff may prevail and be awarded, at the least, substantially

the same equitable relief that he now seeks on his due process claim. That does not grant him all of the final relief that he seeks; the reprieve may be temporary or permanent, depending on the final outcome of the case. And in other cases, where the plaintiff has made a compelling showing of likelihood of success on the merits, courts have included reversals of improper administrative rulings as a component of early injunctive relief. *E.g.*, *Business Leaders in Christ v. University of Iowa*, 360 F. Supp. 3d 885, 895 (S.D. Iowa Feb. 6, 2019) ("[T]he Court [granted a motion for preliminary injunction and] ordered Defendants to restore [the plaintiff's registered student organization] status for a period of ninety days. On June 28, 2018, the Court extended the injunction until the Court renders a judgment in this matter.").

The second provision prohibiting publication of information about the discipline is a logical consequence of vacating that finding and all of the consequences of it, and it is necessary to ensure continued confidentiality since the voluntary non-disclosure agreement must be vacated along with all of the rest of the fruits of the improper discipline.

The third component is necessary to preserve the rights of the parties until this litigation concludes, and to foreclose the University from muddling the record by, essentially, writing its own verdict through a second disciplinary proceeding intended to foreclose the plaintiff's recovery of damages by demonstrating that he would have been expelled even after a constitutionally sound hearing. The University contends that it should be permitted to prove that it would have disciplined the plaintiff anyway even if it had followed a sound process. But it will have a chance to do so here, before a factfinder at a trial to establish liability on Count I and liability and damages on Count II (under Title IX). It certainly is entitled to argue that discipline would have been inevitable, if it can prove by a preponderance of the evidence that the plaintiff in fact violated the sexual misconduct policy. *See Newsome*, 842 F.2d at 928.

The defendants insist that the proper remedy under the circumstances would be to allow the University to forge ahead with a new appeal hearing, citing principally *Doe v. Alger*, No. 15-00035, 2017 WL 1483577, at *2 (W.D. Va. Apr. 25, 2017) ("[T]he standard remedy in similar cases is a new hearing that comports with due process."). But that is a remedy which typically is imposed — as it was in *Alger* — at the end of the litigation, not at the outset. The proceedings here have not concluded in favor of any party, and no party has (yet) obtained a fully dispositive ruling on any of the plaintiff's claims that survived the remand. The University's preferred course of further remand to it for a renewed hearing is inappropriate, because the case has not reached its conclusion.

Doe insists that no further disciplinary proceedings should be permitted at all, but the case on which he principally relies, *Doe v. George Mason Univ.*, 179 F. Supp. 3d 583 (E.D. Va. 2016), readily is distinguishable from the mine run of cases in which a renewed hearing with proper process was allowed to proceed eventually. In that case, the district court concluded that (1) the appeal was improperly initiated with no proper grounds under the GMU's policy in the first place; and (2) there were no provisions in the policy for a renewal of the appeal after the extreme delay that resulted from the ensuing litigation. For that reason, the district court explained, "the facts of this case are not typical of cases in which a student is expelled without due process." *Id.* at 588. The court held that the school was not entitled to a redo where "(i) the granting of the appeal was contrary to GMU procedures in the first instance and (ii) under GMU procedures the time to initiate a new appeal of the . . . panel's decision has long since passed." *Id.* 588-89.

In this case, there never has been any suggestion that the disciplinary appeal was commenced improperly. It remains to be seen whether, at the end of all this, the University's

policy may allow for its renewal.  But whether that may occur is a question for another day, and perhaps another court.

Finally, the plaintiff insists that the University should be directed immediately to grant him a degree.  His position is understandable in that he already has suffered irreparable harm due to the expulsion that delayed and greatly enlarged the expense and time required for his education. *See Doe v. GMU*, 179 F. Supp. 3d at 587 (observing that, because of the unlawful appeal procedure, which should not have been undertaken at all, "[t]he clock cannot be turned back to December 2014 to allow plaintiff to resume his course of study on his preferred schedule [and], plaintiff will complete his education at GMU, if at all, several months or years behind the majority of his peers with whom he matriculated").  However, the harm due to the extra expense and delay already has been done, and it cannot be undone by an order of this Court for an award of a degree.  Nor has it been established at this point that the plaintiff cannot be subjected to any further discipline.  A verdict in his favor would foreclose that result, but no verdict has been reached.  And a verdict for the University may allow it to pursue discipline again.  If the plaintiff eventually is subjected to a properly conducted appeal resulting in the same discipline previously imposed, then he could not — and should not — be awarded a degree.  Therefore, directing that remedy at this stage of the case would be hasty and could work harm to the University by compelling it to award a degree to a student who is not qualified to receive that honor.

## VI.  Conclusion

The second amended complaint contains sufficient facts to establish the personal involvement of defendants David H. Baum, Susan Pritzel, Tabitha Bentley, and E. Royster Harper, but not the other individual defendants.  Qualified immunity shields the individual defendants from a damage award on the due process claim.  The plaintiff is not entitled to partial summary judgment

of liability on the due process claim, but he is entitled to judgment as a matter of law on certain elements of that claim.  Doe is not yet a prevailing party and therefore is not entitled to attorney's fees under 42 U.S.C. § 1988(b).  Doe is entitled to certain interim relief.

Accordingly, it is **ORDERED** that the second motion to dismiss (ECF No. 133) is **GRANTED IN PART AND DENIED IN PART**.  The second amended complaint is **DISMISSED WITH PREJUDICE** as to defendants Walesby, Bazzy, Wessel, Frumkin, and Sellers, **ONLY**.  The damage claim against all defendants is **DISMISSED WITH PREJUDICE** as to all individual defendants on Count I of the second amended complaint, **ONLY**.  The motion is **DENIED** in all other respects.

It is further **ORDERED** that the plaintiff's motion for partial summary judgment (ECF No. 138) is **GRANTED IN PART AND DENIED IN PART**.  The Court determines as a matter of law that as to Count I of the second amended complaint, the plaintiff had a protected interest in his continued enrollment, he was deprived of that interest when he was forced to withdraw his enrollment in lieu of expulsion, and the plaintiff was not afforded sufficient pre-deprivation rights. The motion is **DENIED** in all other respects.

It is further **ORDERED** that the plaintiff's motion for interim attorney's fees (ECF No. 135) is **DENIED**.

It is further **ORDERED** that the plaintiff's motion for an interim remedy on Count I of the second amended complaint (ECF No. 107) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the defendants, their agents, servants attorneys, employees, and all those in active concert and participation with them who receive actual notice of this order, are **ENJOINED AND ORDERED** to immediately do the following:

A. Vacate the finding of misconduct by the appeal board, expunge all sanctions and consequences of that finding as to plaintiff John Doe, including the plaintiff's "voluntary

withdrawal" and the no-contact directives imposed as a result of that withdrawal agreement, and restore the plaintiff promptly and fully to the same academic status that he held just after the favorable finding by the OIE investigator was published, but before the complainant's appeal was commenced;

B. They are prohibited from disclosing to any third parties any information concerning the disciplinary appeal and its consequences, or the identity of plaintiff John Doe in any fashion connected with the disciplinary appeal and this litigation; and

C. They are prohibited from proceeding in any way with any further disciplinary appeal process until this litigation has concluded.

The motion is **DENIED** in all other respects.

It is further **ORDERED** that the defendants' motion for a protective order (ECF No. 148) is **DENIED as moot**.

It is further **ORDERED** that counsel for the parties appear before the Court on **October 3, 2019 at 11:30 a.m.** for a status conference to discuss further case management deadlines.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   September 30, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on September 30, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---